# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRENDA L. FERGUSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-CV-220-TLW |
| ) | |
| MICHAEL J. ASTRUE ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

Plaintiff Brenda L. Ferguson seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 405(g).[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[2] [Dkt. # 7].

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant

---

[1] Plaintiff filed a prior claim for disability insurance benefits, which was denied on March 12, 1991. [R. 46].

[2] Plaintiff's July 31, 2006, application for disability insurance benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Lantz McClain was held on July 27, 2007. By decision dated September 21, 2007, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied plaintiff's request for review on February 21, 2008. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991). Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495 (10th Cir. 1992).

## **Background**

Plaintiff was born on April 26, 1962 [R.25] and was 28 years old on the date last insured.[3] Plaintiff has a high school education and completed one year of college in 1981. [R. 62]. Plaintiff married Harvey Ferguson on November 4, 1986. From 1980 to 1984, plaintiff worked as a clerk for a convenience store, and from 1986 to 1991 plaintiff was self-employed, driving a neighborhood ice cream truck. [R. 48].

In her SSI application, plaintiff claims to have been unable to work since March 13, 1991, [R. 25] as a result of a ruptured disc in her back and depression.[4] [R.57]. Plaintiff claims that her ruptured disc was caused by an automobile accident which occurred on April 12, 1989. [R. 94]. Plaintiff last met the insured status requirements of the Act on March 31, 1992. [R. 18]. Accordingly, the issue before the ALJ was whether plaintiff was disabled, as that term is defined

---

[3] Plaintiff was 45 years old at the time of the hearing before the administrative law judge.

[4] Plaintiff has abandoned her request for disability benefits based on depression. Depression was not addressed in the ALJ's decision nor has it been raised as an issue of error in the instant appeal.

under the Act, during the period from her alleged onset date of March 13, 1991 through her date last insured of March 31, 1992. See 20 CFR 404.1520(b) and 404.1571 et seq.

In assessing plaintiff's qualification for disability insurance benefits, the ALJ found at step-one that plaintiff did not engage in substantial gainful activity during the period of her alleged disability. [R. 18]. At step two, the ALJ found that through the date last insured, plaintiff had the following severe impairment: muscle ligament strain as defined under 20 CFR 404.1520(c). [R. 18]. Plaintiff was hospitalized on June 16, 1989, for pain following her motor vehicle accident in April, 1989, and at that time was diagnosed with muscle ligament strain. [R. 18]. At step-three, the ALJ found that through the date last insured, plaintiff's did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; with specific emphasis given to Listing 1.04 (pertaining to disorders of the spine). [R. 18]. The ALJ found that, prior to the date last insured, there was no evidence that plaintiff had nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. [R. 19]. At step-four the ALJ found that, through the date last insured, plaintiff had the residual functional capacity ("RFC") to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 6 hours in an 8-hour workday, and sit for at least 6 hours in an 8-hour workday.[R. 19]. Further that, on or prior to March 31, 1992, plaintiff's RFC would not preclude sedentary activity with the previously mentioned restrictions. [R. 21]. The ALJ determined plaintiff had no past relevant work as that term is defined under 20 CFR 404.1565. Thus transferability of job skills was not at issue. [R. 21]. At step five, the ALJ found that through the date last insured, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed as defined under

3

20 CFR 404.1560(c) and 404.1566. Based on a RFC for the full range of sedentary work and in consideration of Medical-Vocational Rule 201.27, the ALJ concluded that plaintiff was not under a disability as defined by the Act, at any time from March 13, 1991, the alleged onset date, through March 31, 1992, the date last insured. [R. 20-1]. In sum, the ALJ's decision was concluded at step-five of the evaluation sequence in the ALJ's finding that plaintiff was capable of performing a significant number of jobs in the national economy from the dates March 13, 1991 through March 31, 1992. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[5]

In her instant appeal, plaintiff seeks reversal of the ALJ's determination claiming his decision is not supported by substantial evidence in the record and is contrary to law. Specifically, plaintiff alleges the following errors for review: (1) The ALJ failed to properly consider the source opinions; (2) the ALJ failed to properly apply the Medical-Vocational Guidelines; and (3) the ALJ failed to perform a proper credibility determination. [Dkt. # 17 at 2].

## **Discussion**

In social security cases, plaintiff bears the burden of establishing a prima facie case of disability at steps one through four of the five step evaluation. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). Once plaintiff has established a disability, at step 5 the burden shifts to the Commissioner to show that the plaintiff retains the ability to do other work activity and that jobs the

---

[5] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

plaintiff could perform exist in the national economy. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

As her first assignment of error, plaintiff contends the ALJ failed to properly consider the opinion of her two chiropractors in assessing the limitations caused by her back injury in 1989.

Under the regulations, in assessing the limitations caused by an alleged disability, the ALJ must consider all of the available evidence in the individual's case record. This includes "acceptable medical sources" and "other sources." "Acceptable medical sources" includes licensed physicians, psychologists, optometrists, podiatrists and speech-language pathologists. See 20 CFR 404.1502 and 416.902. "Other sources" not considered "acceptable medical sources" includes nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. See 20 CFR 404.1513(d) and 416.913(d). The ALJ may rely only on "acceptable medical sources" for the following purposes: (1) to establish the existence of a medically determinable impairment, 20 CFR 404.1513(a) and 416.913(a); (2) for a medical opinion, 20 CFR 404.1527(a)(2) and 416.927(a)(2); and (3) as treating sources whose medical opinions may be entitled to controlling weight. 20 CFR 404.1527(d) and 416.927(d). The ALJ may use evidence from "other sources" only to show the severity of the individual's impairments and how those impairments affect the individual's ability to function. In other words, information from "other sources" cannot be used to determine an impairment, provide an opinion, or be the controlling source. SSR 06-03p.

In assessing the limitations caused by plaintiff's back injury, the ALJ first properly considered evidence from "acceptable medical sources" which was obtained prior to March 31, 1992, the date the plaintiff was last insured for purposes of disability benefits. The ALJ relied on

5

a June 16, 1989, X-ray Report prepared by G. Young, M.D. which showed that plaintiff's cervical spine was normal. Dr. Young's report reads:

> CERVICAL SPINE, 6/16/89: The vertebral bodies are of normal alignment and no bone abnormalities are noted. The disc spaces are well maintained. The prevertebral soft tissue appear normal. IMPRESSION: 1) Normal.   THORACIC SPINE, AP AND LATERAL: 6/26/89: alignment is normal and no bone abnormalities are note.

(Exhibit 3F, page 79)[R. 178]. The ALJ also relied on a June 20, 1989, MRI Report prepared by S.M. Edwards, M.D., Radiologist, showing a normal cervical and lumbar spine area. Dr. Edwards' report reads, in relevant part:

> MAGNETIC RESONANCE IMAGING: CERVICAL SPINE 6/20/89: There is no evidence to suggest gross fracture, dislocation or bone destruction with the cervical spine. The spinal canal is average in size and shape. No abnormal masses are seen within the canal. The spinal cord is average in size and intrinsically intact. No significant congenital abnormalities are seen around the foramen magnum. The intervertebral dis spaces are remarkable for some dehydration of the disc at C5-6. I do no see significant dis protrusion. IMPRESSION: No significant abnormalities have been demonstrated.
>
> MAGNETIC RESONANCE IMAGING - LUMBAR SPINE: 6/20/89: There is no evidence to suggest gross fracture, dislocation or bone destruction within the lumbar spine. No significant congenital abnormalities are seen. The spinal canal appears average in size and shape for the age. No abnormal intraspinal masses are seen. The conus of the cord is at its usual level. There are no abnormal pre or perivertebral soft tissue masses. The intervertebral dis spaces are remarkable for a very minimal central bulge posteriorly at L4-5. This may also be due to a small osteophyte. There is no significant encroachment on the thecal sac or neuroforamina at any level. IMPRESSION: No significant abnormalities have been demonstrated.

(Exhibit 3F, pages 64-65) [R. 163-4].   The ALJ also relied on an August 23, 1990, MRI Report prepared by Eric Eckman, M.D, Radiologist, showing no significant abnormality and minimal disc bulge at L4-5 of the lumbar spine. Dr. Eckman's report reads, in relevant part:

> MAGNETIC RESONANCE IMAGING-LUMBAR SPINE: 8/23/90: The bony alignment is normal. There is no evidence for gross fracture or dislocation; there is no demonstrable bony destruction or congenital anomaly. The conus medullaris is at T12. The spinal canal is average in size and shape. No intraspinal masses are seen. The pre and perivertebral soft tissues are normal. The intervertebral disc spaces are well maintained and hydrated. There

>is no evidence to suggest a significant disc bulge.  IMPRESSION: No significant abnormalities has been demonstrated. There is no change in the <u>minimally</u> bulging L4-5 disc as compared with the previous study.

(Exhibit 3F, pages 60 and 67). [R. 159, 166].

The ALJ considered  a July 20, 1989, letter prepared by plaintiff's chiropractor, Dr. John Johnson which states in its entirety, "Brenda has been instructed not to lift any weight over 5 lbs or - perform any unnecessary activities that require stooping or bending over." [R. 165].  The ALJ could only construe Dr. Johnson's letter as an opinion.   Rather than relying on his opinion, the ALJ properly followed  20 CFR 1513(d)(1) which directs that chiropractors are not "acceptable medical sources" and the weight given to chiropractic evidence is limited to information related to the severity of an impairment and how an impairment affects an individual's ability to work.  Clearly, Dr. Johnson's letter is not objective medical evidence showing the severity of plaintiff's back injury or how her back injury has impacted her ability to work.  Dr. Johnson's letter merely stated a conclusory opinion.  Thus, the Court finds it was not error for the ALJ to decline to adopt Dr. Johnson's opinion, because his opinion was contrary to the following objective medical evidence in the record: the X-ray Report of the cervical spine performed on June 16, 1989, the MRI Report of the cervical and lumbar spine area performed on June 20, 1989, and the follow-up MRI Report performed on August 23, 1990.

Plaintiff also relies on  a November 12, 1990, letter prepared by Dr. Michael Guinn, D.C. Dr. Guinn stated that the results of a "radiographic examination" that he performed had "notable findings" for moderate hypolordosis [spine curvature], moderate hyperlordosis [swayback], evidence of "possible soft tissue damage" and subluxation [misaligned vertebrae]. [R. 152-3].

In rejecting plaintiff's contentions, the Court finds  the ALJ properly relied on the reports

7

and diagnosis of three licensed radiologists in determining plaintiff's impairment during the relevant time frame, because these reports are objective medical evidence from acceptable medical sources. The reports from plaintiff's chiropractors were mentioned by the ALJ but not relied on because they were "other source" evidence and not controlling weight. Under the Act, the ALJ must use and rely on acceptable medical sources to determine the impairment, consider a medical opinion and give those opinions controlling weight. 20 CFR 404.1527(d) and 416.927(d).

Next, plaintiff claims the ALJ erred in failing to consider medical records from plaintiff's treating physician Robert Harper, M.D, Orthopedic Surgeon. [Dkt. # 17 at 3]. The Court finds no merit to plaintiff's argument. First, the subject records are dated October 2, 2000, [R. 94], October 16, 2000, [R. 92]; October 30, 2000, [R. 91]; November 13, 2000, [R. 90]; November 27, 2000, [R. 88, 89]; and December 4, 2000, [R. 93]. These dates are more than seven years after plaintiff's last insured date of March 31, 1992, and are not evidence of her physical condition during the relevant time. Second, these records are merely Dr. Harper's summary dictation of plaintiff's subjective complaints and the various pain medication he prescribed to treat the symptoms. These records do not contain any diagnostic tests. Third, the record contains plaintiff's contemporaneous medical records and diagnostic reports which show plaintiff's physical condition on or before plaintiff's last insured date. The relevant issue before the ALJ was whether plaintiff's back problems were disabling on or before March 31, 1992. The objective medical evidence of record clearly establishes that her back condition was not disabling at that time. Rather, the contemporaneous records establish there was only minimal bulging at L4-5 of the lumbar disc. There was no evidence to support plaintiff's claim that her current complaints relate back to 1989.

Plaintiff argues the ALJ "must discuss the uncontroverted evidence he chooses not to rely

upon, as well as significantly probative evidence he rejects." [Dkt. # 17 at 4]. As the above discussion illustrates, however, Dr. Harper's records were not significantly probative of whether plaintiff was disabled as of March 31, 1992. Nor did the ALJ ignore uncontroverted evidence of plaintiff's 1989 injury (muscle ligament strain) and the accompanying diagnostic tests (1989 and 1990) which indicated that plaintiff's cervical and lumbar spine region were both in normal condition. See Blea v. Barnhart, 466 F.3d 903, 913 (10th Cir. 2006)(an ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record). Thus, the Court concludes that the ALJ did not err in failing to discuss the medical records from plaintiff's treating physicians.

Plaintiff also faults the ALJ for failing to discuss plaintiff's subjective complaints of pain as shown in her hospital record dated June 21, 1989. The Court finds no merit in this argument because no new diagnostic tests were performed on plaintiff during her hospitalization. Her treating physician relied on her prior X-ray Reports and MRI Reports, discussed above. Plaintiff was treated with "conservative care, physiotherapies and muscle relaxants and pain medication." [R. 172]. During her hospitalization, Dr. Harsha observed that plaintiff's back complaints may be complicated and intensified by psychologic distress. Dr. Harsha notes: " The diagnosis as I see her at this time is muscle ligament sprain residuals related to neck, shoulder girdle and mid and low back with somatization type of problem that is complicating and intensifying her symptoms." [R. 176]. At the time of discharge, Dr. Harsha relied on the previous MRI reports in formulating his diagnosis. [R. 172]. Plaintiff's hospital reports were not inconsistent with the objective medical evidence relied on by the ALJ in his decision. Thus, the Court finds that the ALJ's decision is supported by substantial evidence and the correct legal standards were applied.

As to her second assignment of error, plaintiff contends the ALJ failed to properly apply the Medical-Vocational Guidelines ("Grid"). [Dkt. # 17 at 5]. The ALJ relied on the Grid to determine whether there was work available in the national economy that plaintiff could perform. "Automatic application of the girds is appropriate only when a claimant's RFC, age, work experience, and education match a grid category." Ray v. Bowen, 865 F.2d at 225. Evidence of nonexertional limitations, such as pain, may limit automatic application of the Grid because pain may limit an individual's capacity to work, such that he may not be able to perform the full range of work available within an RFC category. Id.

Plaintiff contends the ALJ erred in relying on the Grid, because the record shows that plaintiff's pain limited her ability to perform work, and the ALJ failed to specifically state that plaintiff's pain had no impact on her ability to work. Contrary to plaintiff's claim, the ALJ specifically addressed plaintiff's allegations of pain. In so doing, the ALJ applied the proper legal standard for evaluating subjective evidence. [R. 19-20]. In discounting plaintiff's testimony, the ALJ identified the objective medical evidence he relied upon, including the X-ray Report and MRI Reports discussed above. As stated, this evidence showed that plaintiff had a normal cervical and lumbar spine area, with only a minimal bulging at L4-5 of the lumbar disc. The ALJ also reviewed other evidence of plaintiff's back injury and carefully compared plaintiff's "signs, symptoms and laboratory findings with the criteria specified in all the Listings of Impairments." He gave emphasis to Listing 1.04, pertaining to disorders of the spine. The ALJ found "no evidence prior to the date last insured that the claimant had nerve root compression; spinal arachnoiditis; or lumbar spinal stenosis." [R.19]. The ALJ compared plaintiff's allegations of pain and other subjective symptoms with the objective medical evidence and concluded that plaintiff's "medically determinable

impairments could have been reasonably expected to produce the alleged symptoms but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [R.20]. As previously discussed, the ALJ rejected her chiropractor's opinion that plaintiff's should not engage in any unnecessary stooping and bending finding that "the objective medical evidence does not show an impairment that would justify the limitations given." [R.21]. In conclusion, the ALJ noted that he did not discount all of plaintiff's complaints, but noted that her treating physicians did not place any functional restrictions on her activities that would preclude sedentary work with the previously mentioned restrictions on or prior to March 31, 1992. [R. 21]. "The mere presence of some nonexertional pain [does] not automatically preclude reliance on the grids." Ray v. Bowen, 865 F.2d at 225.

Next, plaintiff faults the ALJ for finding that plaintiff had the RFC to perform the exertional requirements for light work,[6] but applied Grid Rule 201.27, to support a finding of not disabled at the exertional requirements for sedentary work. [R. 21]. Plaintiff contends the ALJ's RFC findings are inconsistent with the Grid Rules.

The ALJ applied Grid Rule 201.27, which directs a finding of not disabled for an individual with plaintiff's vocational profile [high school education or more; and unskilled or no previous work experience] and a RFC capacity for sedentary work. [R. 21]. 20 C.F.R. Pt. 404, Subpt. P., App.2. § 201.27. The Court finds no error in the ALJ relying on a RFC supporting light work and on Grid Rule 201.27 for sedentary work, because under § 202.00(a), the capacity to perform the full range of light work includes the capacity for sedentary work. If the ALJ had elected to apply the Grid for

---

[6] The ALJ found that plaintiff had the RFC to occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and /or walk at least 6 hours in an 8-hour work-day; and sit for at least 6 hours in an 8-hour workday. [R. 19].

light work with plaintiff's vocational profile, the Grid would still support a finding that plaintiff was not disabled. Thus, there was no error in the ALJ relying on the Grid to find that plaintiff was not disabled.

Plaintiff next contends the ALJ's hypothetical posed to the vocational expert was insufficient, because the ALJ failed to include any physical limitations. This argument lacks merit because the ALJ did not rely on the opinion of the vocational expert in finding that jobs in the national economy were available to plaintiff, instead the ALJ properly applied the Grid to make this determination. Prior to promulgation of the Grids in 1978, the Commissioners relied on vocational experts to establish the existence of suitable jobs in the national economy. The Grids obviated the need for expert testimony by setting forth rules that identify whether jobs requiring specific combinations of the four factors identified by Congress-RFC, age, education, and work experience- exist in the national economy. Gossett v. Bowen, 862 F.2d 802, 806 (10th cir. 1989).

By application of the regulations, the ALJ classified plaintiff (during the relevant time frame) as a "younger individual" [R. 21]; with at least a high school education, with the ability to speak English. [R. 21]. The ALJ determined that transferability of job skills was not at issue because plaintiff did not have significant past relevant work. [R. 21]. The ALJ ultimately determined that through the date last insured, considering plaintiff's age, education, work experience, and RFC capacity to perform sedentary work, a finding of "not disabled" was directed by Grid Rule 201.27. The ALJ took Administrative notice that a significant number of jobs existed in the national economy that plaintiff could perform. [R. 21]. The Court finds that because the ALJ clearly identified in the record medical evidence that he relied on to support his conclusion that plaintiff does not suffer from disabling pain, the ALJ properly applied the Grids in determining that work

exists in the national economy which plaintiff is qualified to perform. The ALJ's finding that plaintiff suffered from no nonexertional impairment severe enough to limit the range of jobs available to her, and his consequent reliance of the Grids, were supported by substantial evidence. Thus the ALJ properly relied on the Grid guidelines to demonstrate the existence of substantial gainful work in which plaintiff could engage and additional testimony from the vocational expert was not necessary. Id. at 808.

As her third assignment of error, plaintiff contends the ALJ failed to perform a proper credibility determination. [Dkt. # 17 at 8]. The ALJ did make a credibility determination in his decision. He stated:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

[R. 20]. Credibility determinations are peculiarly the province of the finder of fact, and the Court should affirm that finding if it is closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished).[7]

At the hearing, plaintiff testified that she tried to return to work driving the ice cream truck in July 1990, and tried again in 1991 to work for the post office, but had to quit because "bending and twisting" caused her severe low back pain. [R. 275, 278]. At the hearing, plaintiff was represented by counsel and her counsel led her through direct examination. As to the limitations

---

[7] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

caused by her back injury, plaintiff testified, at times, she was unable to dress herself, comb her hair, do housework or engage in hobbies. She could no longer go to ball games, fish, walk, ride bikes or do any activities outside the house. [R. 279]. In listing her health problems, plaintiff testified that besides back pain, she had high blood pressure, high cholesterol, asthma, and knee problems. [R. 279-80]. She testified that she wore a knee brace to keep her knee from going "in and out" and without her brace, she would fall on her face.[8] [R. 280].

In assessing plaintiff's credibility regarding the limitations caused by her back injury prior to or before the date last insured, March 31, 1992, the ALJ relied on plaintiff's medical records. As stated above, the X-ray Reports and MRI Reports taken shortly after plaintiff's automobile accident in 1989, showed plaintiff's cervical and lumbar spine area was normal with only minimal bulging at L4-5 of the lumbar disc. The ALJ discounted other non-diagnostic medical evidence which post-dated these records as being less reliable and/or as other source and not controlling evidence. Thus, the Court finds that the ALJ's determination of credibility was closely and affirmatively linked to substantial evidence.

Plaintiff argues that the ALJ failed to develop the record by failing to inquire about the existence of pain and limitations during the period preceding her date last insured. [Dkt. # 17 at 8]. The Court finds no merit to this claim. The record shows that the ALJ allowed plaintiff's counsel to conduct direct examination; therefore, it was her counsel's obligation to direct his questions to plaintiff's purported physical limitations on or before the date last insured. [R.16]. "[W]hen the

---

[8] The record indicates that subsequent to the car accident, in 1994 plaintiff fell and twisted her right knee. She heard her knee " pop" and had ACL reconstructive knee surgery that same year. [R. 128, 143, 151]. Any physical limitations resulting from plaintiff's 1994 knee surgery are not relevant to the issue raised in this appeal.

claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." Cowans v. Apfel, 202 F.3d 281 (10th Cir. 1999) citing Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997).

The ALJ took necessary steps to assure that the record was properly developed for his review. At the beginning of the hearing, the ALJ framed the issue as being whether plaintiff was unable to engage in substantial gainful activity by reason of a disability prior to March 31, 1992. The ALJ then inquired of plaintiff's counsel, whether the record was fully developed and complete. [R. 270]. Counsel responded by identifying additional medical records he had submitted to the ALJ prior to the hearing. The ALJ gave counsel the opportunity to make an opening statement, conduct direct examination, question the vocational expert and make a closing statement. Plaintiff testified to injuring her back, seeking medical treatment and being unable to return to work. However, counsel directed his questions regarding functional limitations to plaintiff's current physical condition. Plaintiff's current complaints of disabling pain are clearly inconsistent with the diagnostic records taken shortly after the automobile accident in 1989. Under these circumstances, the ALJ adequately developed the record consistent with the issues raised by plaintiff, as limited by the date last insured.

Plaintiff also contends that the ALJ erred in ignoring that she required hospitalization, chiropractic therapy, and physical therapy for her pain. As noted above, the ALJ did not err in failing to rely on this evidence, because the evidence was controverted by other more reliable evidence, including diagnostic tests. As a general rule: "In addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to

rely upon, as well as significantly probative evidence he rejects." Blea v. Barnhart, 466 F.3d 903, 914 (10th Cir. 2006). The ALJ addressed evidence from plaintiff's chiropractor. See supra at 7. Evidence of physical therapy, like evidence from a chiropractor, is considered "other sources" and not controlling. The Court concludes that the ALJ applied the correct legal standards in assessing plaintiff's credibility and that his assessment is supported by substantial evidence.

## Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The Court further finds that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

IT IS SO ORDERED this 21st day of July, 2009.

_____
T. Lane Wilson
United States Magistrate Judge